**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

VICTOR BERNARD WYNNE                                                                    PLAINTIFF

v.                                        No. 2:11CV00100 JLH-BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                          DEFENDANT

**OPINION AND ORDER**

On June 11, 2008, Victor Bernard Wynne applied for disability income benefits and supplemental security income. Tr. 59, 62. Wynne's applications were denied initially and on reconsideration. Tr. 27-28. Wynne asked for a hearing before an ALJ. Tr. 38. Wynne testified at the hearing. On April 23, 2010, the ALJ issued an unfavorable decision, concluding that Wynne was not disabled under the Social Security Act. Tr. 5. Wynne asked the Appeals Council to review the ALJ's decision. Tr. 4. The Appeals Council found no reason to change the ALJ's decision and denied Wynne's request. Tr. 1. The ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *See* 42 U.S.C. § 405(g). Wynne commenced this action on June 2, 2011, seeking judicial review of the Commissioner's decision.

**Scope of judicial review**. When reviewing a decision denying an application for disability benefits, the Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error. *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision

to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser*, 557 F.3d at 925. In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, but the Court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**The disability-determination process**. The Commissioner's regulations set forth a five-step process for evaluating disability claims. *See* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI).

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (citations omitted). "The claimant bears the burden of proving disability. Having shown, however, that he is unable to perform his past relevant

work, the burden shifts to the [Commissioner] to show that work exists in the national economy that the claimant is capable of performing." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

**Wynne's work history and medical history**. Wynne was 33 years old when he allegedly became disabled. He last obtained work through a staffing agency, pulling customer orders and loading orders on trucks for a Coca Cola distributor. Tr. 25, 81, 113, 117. Wynne testified that he stopped working on June 15, 2005, because of swelling in his back and left leg. Tr. 95. There is, however, no medical evidence in the record dating back to that time.

The first medical evidence is a treatment note dated March 2, 2007. Tr. 145. The note documented a complaint of a lifting injury and lower back pain, radiating to the left leg. The only other medical treatment notes are from an Arkansas VA facility in 2007 and 2008. Tr. 149-224, 235-48.

Wynne applied from disability benefits once before. The Commissioner denied the applications on October 19, 2007. Because Wynne did not appeal that decision, the earliest date Wynne could receive benefits was October 19, 2007, even though he maintained he became disabled on June 15, 2005.

**The Commissioner's decision**. At step one of the disability-determination process, the ALJ determined that Wynne had not engaged in substantial gainful activity since his alleged onset date of June 15, 2005. Tr. 10. At step two, the ALJ determined Wynne's ability to work was impaired by a disorder of the spine. Tr. 10. At step three, the ALJ found that Wynne's impairment was severe but determined that the impairment did not meet or equal listing 1.04—the listing that applies to disorders of the spine. Tr. 11. At step four, the ALJ determined that Wynne had the RFC to perform

the full range of light work. Tr. 11-13. The ALJ then applied the Commissioner's Medical-Vocational Guidelines—the grid rules—and determined Wynne was not disabled. Tr. 14.

**Wynne's allegations of error**. Wynne complained about the following aspects of the Commissioner's decision:

(1) the ALJ's determination that Wynne did not meet listing 1.04,

(2) the ALJ's evaluation of Wynne's credibility,

(3) the ALJ's development of the record,

(4) the ALJ's determination about Wynne's RFC, and

(5) the ALJ's reliance on the grid rules.

Based on these complaints, Wynne maintained substantial evidence does not support the Commissioner's conclusion that he is not disabled. Wynne also maintained the Commissioner's decision does not comport with required legal standards.

Listing 1.04. Wynne asserted that he met listing 1.04(A). He maintained the ALJ should have considered his lack of financial resources in determining whether he met the listing. Document #9, pp. 7-10.

In the third step of the disability-determination process, the Commissioner compares the claimant's severe impairment with those on a list of specific impairments. 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI). If the claimant's impairment meets or equals a listed impairment, the ALJ will deem the claimant disabled without considering his age, education, or work experience. Meeting listing 1.04(a) requires the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

4

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively….

20 C.F.R. Pt. 404, Subpt. P, App. 1.

In this case, two pieces of evidence bear on Wynne's argument: (1) a June 15, 2007 MRI, and (2) a September 7, 2007 neurology consultation. The MRI showed the presence of degenerative disc disease in Wynne's lumbar spine, with a moderate sized central/left paracentral disc protrusion at L5/S1, extending inferiorly causing impingement on left S1 nerve root. The MRI also showed a left central disc protrusion osteophyte at L4/5, causing effacement of ventral thecal sac and moderate stenosis; a mild diffuse disc bulge and small left paracentral/lateral recess disc protrusion at L3/4, causing effacement of ventral thecal sac; and a mild diffuse disc bulge at L2/3. Tr. 158-59. A person with a disc protrusion may have symptoms like the ones Wynne complained about if a disc protrudes to the extent that it interferes with a nerve. 3 The Gale Encyclopedia of Med. (4th ed.) 2111-12 (explaining that a herniated disk can put pressure on a spinal nerve, causing pain down the legs, weakness, numbness, or problems with bowels, bladder or sexual function). The MRI findings were consistent with compromise of a nerve root, but Wynne's neurological examination on September 7,

2007, did not confirm nerve root compromise. Tr. 173. Instead, the neurological exam was normal. Tr. 173.

The examining neurologist reported that there was "some encroachment on the transiting S1 nerve root" on the left of L5/S1. Tr. 173. The neurologist found an intact range of motion and an intact central nervous system, and no clinical evidence of S1 radiculopathy. Tr. 173. The neurologist reported that Wynne could ambulate without an assistive device. The physician described Wynne's symptoms as "chronic low back pain with little description of sciatica." Tr. 173. Sciatica would have suggested nerve root compromise. *See* Roger Cicala, M.D., 12-100 Attorneys' Textbook of Med. P 100.60 (3d ed.) ("Sciatica can be caused by a variety of problems including spinal nerve compression by an intervertebral disc, vertebral or sacral arthritis, and muscle or nerve inflammation."); *id*. at 13-176.40 ("The most frequent cause is peripheral nerve root compression resulting from protrusion of an intervertebral disc or a tumor."). The examination findings did not confirm nerve root compromise. Nerve root compromise is required for listing 1.04.

In addition, the record included no evidence of sensory or reflex loss, spinal arachnoiditis, lumbar spinal stenosis, chronic nonradicular pain and weakness, or the inability to ambulate effectively. No evidence showed that Wynne satisfied all of listing 1.04's requirements. Thus, the ALJ did not err in determining Wynne did not meet or equal the listing. Substantial evidence supports the ALJ's determination that Wynne did not meet or equal listing 1.04(A).

The ALJ's evaluation of Wynne's credibility. Wynne alleged that pain precluded him from doing any work. He reported that his back swelled if he did any activity. Tr. 108. The ALJ found Wynne's reports of pain "significantly exaggerated" and generally unreliable. Tr. 13. Wynne challenges the ALJ's evaluation of his credibility and argues that the ALJ failed to analyze the "entire

6

line of evidence relating to the pain and the underlying impairment alleged to cause the pain." Document #9, p. 13.

An ALJ has a statutory duty "to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). "In assessing a claimant's credibility, an ALJ must consider all of the evidence related to the subjective complaints, the claimant's daily activities, observations of third parties, and the reports of treating and examining physicians." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

The ALJ's opinion detailed Wynne's complaints about pain, but determined the "level of low back pains the claimant reports is not supported by the medical evidence in the file." Tr. 12. The ALJ's reasons for finding Wynne incredible included: (1) Wynne had virtually no medical care for his back, (2) Wynne failed to followup on a VA referral to a pain clinic, (3) Wynne used only Tylenol and a muscle relaxer for back pain, (4) Wynne had never undergone physical therapy, (5) Wynne engaged in no exercise, and (6) Wynne participated in no support group. Tr. 12-13. Instead, the ALJ observed, Wynne sought no other relief for his alleged pain "but idleness." Tr. 13. The ALJ also reasoned that although Wynne consistently complained about swelling in his back, "no doctor ha[d] actually seen [him] with swelling in his low back." Tr. 13. The ALJ also observed that Wynne "complained of pain and swelling in his left foot – but I see no doctor appointment specifically about it, and no report of any imaging examination for it." Tr. 11.

The ALJ discussed the medical evidence, which was scant, in detail. The ALJ observed that Wynne had one outpatient appointment after the neurology consultation before announcing that he was transferring to a Memphis VA facility, but there was no further documented medical care for his back. Tr. 11. The medical evidence showed that Wynne complained to the VA about rectal bleeding

and was scheduled for a colon examination, but the record included no report of a colonoscopy. Tr. 11.

The failure to seek treatment when treatment was available contradicted Wynne's allegation of disabling pain. The lack of medical evidence substantiating Wynne's claims and his failure to seek available medical treatment constitute substantial evidence supporting the ALJ's evaluation of Wynne's credibility. The ALJ did not err in evaluating Wynne's credibility because the ALJ considered Wynne's complaints, his description of his daily activities, and the reports of treating physicians.

The ALJ's development of the record. Wynne contends the ALJ failed to fully and fairly develop the record because the ALJ did not order orthopaedic and rheumatology examinations before assessing his RFC. Document #9, pp. 18-19. Wynne complains that the ALJ relied on non-treating, non-examining physicians who reviewed his medical records. *Id*. He also argues that the ALJ should have obtained recent medical records from the Memphis VA, where he says that he was being treated at the time of the hearing. Document #9, p. 3.

The ALJ had a duty to fairly and fully develop the record as to the matters at issue. *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1973). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

The issue here is whether Wynne was disabled because of his back condition. The record provided sufficient evidence to determine whether Wynne's back condition precluded him from

working because the record included the results of the MRI and the neurological exam. That evidence also provided sufficient evidence to determine Wynne's RFC.

A claimant has the burden of proving his RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 592 (8th Cir. 2004). Wynne argues that the ALJ reached his own conclusion about his RFC, but the ALJ actually relied on a consulting physician's opinion to reach the RFC determination. The Commissioner twice asked for medical advice—once on July 1, 2008, Tr. 225, and again on September 29, 2008, Tr. 250. The first time, the consultative physician reviewed Wynne's medical records and opined that Wynne had the RFC for light work. Tr. 234. That assessment was affirmed when the second request for medical advice was made. Tr. 252. The ALJ incorporated the consulting physician's assessment into the RFC determination. Thus, the ALJ did not simply reach his own conclusion; instead, the ALJ relied on a medical expert.

In the letter scheduling the hearing, the ALJ stated:

> It is very important that the evidence in your file is complete and up-to-date. If there is more evidence, such as recent records, reports, or evaluations that you want me to see, please mail or bring that evidence to me as soon as possible. If you cannot submit the evidence to me before the hearing, you may bring it to the hearing. Submitting evidence to me before the hearing can often prevent delays in reviewing your case.

Tr. 41. Thus, the ALJ invited Wynne to submit recent reports, records, or evaluations before or at the hearing, but Wynne did not do so. Nor did he request that the record be held open so he could submit them after the hearing. The ALJ did not err in the development of the record.

<u>Wynne's RFC</u>. Wynne contends that the ALJ did not consider his non-exertional limitations in determining his RFC. Document #9, pp. 15-16. He argues that this case should be remanded to the Commissioner for consideration of the effects of pain and his pain medication.

The ALJ must "determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Before determining a claimant's RFC, "the ALJ must determine the [claimant's] credibility, as his subjective complaints play a role in assessing his RFC." *Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

The ALJ in this case considered Wynne's medical records, the observations of Wynne's treating physicians, the consulting physician's opinion, and Wynne's description of limitations. The ALJ's consideration of Wynne's medical records and observations of treating physicians is reflected in a thorough discussion of the scant medical evidence. Tr. 10-11. The ALJ's consideration of the consulting physician's opinion is reflected in the ALJ's RFC determination. The ALJ's consideration of Wynne's description of his limitations is reflected in the ALJ's finding that Wynne's statements were "significantly exaggerated."

The consulting physician opined that Wynne could perform light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b) (DIB); 20 C.F.R. § 416.967(b) (SSI). The ALJ determined that Wynne had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 12. That determination was consistent with the requirements for light work.

Although Wynne complained about the ALJ's failure to consider his non-exertional limitations, the ALJ found no non-exertional limitations, reasoning that although Wynne "could plausibly have some level of low back pain," Tr. 12, the reported level was "not at all supported by the medical evidence," Tr. 12. To the extent that pain impacted Wynne's RFC, the ALJ stated that he had adequately allowed for pain in determining Wynne's RFC. To the extent that Wynne

10

complained about the effects of medication, Wynne's muscle relaxer sometimes causes drowsiness, Tr. 236, but Wynne did not explain how periodic drowsiness precludes him from doing light work. The ALJ did not err in determining Wynne's RFC. The consulting physician's assessment of Wynne's ability to do light work constitutes substantial evidence supporting the ALJ's determination.

<u>The ALJ's use of the grid rules</u>. Instead of requiring the testimony of a vocational expert, the ALJ relied on the grid rules in determining Wynne was not disabled. Wynne contended a vocational expert was needed to determine whether his nonexertional impairments rendered him unable to engage in the full range of light work. Document #9, pp. 16-17, 20.

When a claimant has nonexertional impairments, the ALJ must ask a vocational expert to testify about the effect of the claimant's nonexertional limitations on his ability to find jobs in the national economy. *See McCoy v. Astrue*, 648 F.3d 605, 613-14 (8th Cir. 2011). Because the ALJ in this case found no nonexertional limitations, the ALJ could rely on the grid rules.

To the extent the ALJ erred, an exception to the general rule permitted the ALJ to rely on the grid rules if the ALJ determined the claimant's nonexertional limitations did not significantly affect the claimant's RFC. *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (citations omitted). A determination that nonexertional limitations did not significantly limit Wynne's RFC is implicit in the ALJ's statement that he adequately allowed for Wynne's pain and its effects in the assigned RFC. Tr. 13.

Because the ALJ was within his discretion, based on the record, to discredit Wynne's subjective complaints of pain and find that Wynne's pain did not diminish his ability to perform the full range of light work, the ALJ properly relied on the grid rules without vocational expert testimony. *See Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). Regardless of whether Wynne had

11

nonexertional limitations, or had nonexertional limitations that did not significantly limit his RFC, the ALJ did not have to consult a vocational expert. In either case, the applicable grid rule indicated Wynne was not disabled. Thus, the ALJ did not err. Application of the grid rule constitutes substantial evidence supporting the ALJ's decision.

**Conclusion**. Having determined substantial evidence supports the Commissioner's denial of Wynne's applications for disability benefits, and the Commissioner made no legal error, the Court DENIES Wynne's request for relief and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this 27th day of June, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE